UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,                    Indictment No. 1:96-cr-00932-FB


                        -against-


                                             **MEMORANDUM OF LAW IN**
                                             **SUPPORT OF DEFENDANT'S**
WALTER JOHNSON,                              **AMENDED AND**
                                             **SUPPLEMENTAL MOTION TO**
                        Defendant.           **VACATE HIS CONVICTION**
-------------------------------------------------------------------X




<u>**Memorandum of Law in Support of Defendant's Amended and Supplemental**</u>
<u>**Motion to Vacate His Conviction**</u>

## Table of Contents

Table of Authorities…..…...……….………………………………………………………..ii

Preliminary Statement……………………………………………………………………1

Statement of Facts………………………………………………………………...…..1-5

Discussion    …………………………………………………………...................5-20

    Point I………………………………………………………………………….5-7

**AT A MINIMUM A HEARING SHOULD BE HELD**

    Point II…………………………………………………………………….7-13

**NEWLY DISCOVERED EVIDENCE PROVES THAT MR. JOHNSON IS ACTUALLY INNOCENT WITH REGARD TO ALL OF THE CRIMES CHARGED. ALTERNATIVELY, NEWLY DISCOVERED EVIDENCE WOULD HAVE PROBABLY CHANGED THE VERDICT.**

    **Subsection a**………………………………………………………………8-10

    Mr. Johnson is actually innocent of the Robberies, Drug Conspiracy and Witness Tampering that was charged in the indictment

    **Subsection b**………………………………………………………………10-13

    If the jury heard the newly discovered evidence now before the Court, there is a reasonable probability that the outcome would have been different.

    Point III…………………………………………………………………….13-15

**THE GOVERNMENT ALLOWED A FRAUD UPON THE COURT AND VIOLATED PETITIONER'S RIGHT TO DUE PROCESS WHEN BOTH CRYSTAL WINSLOW AND JAYTEE SPURGEON TESTIFIED FALSELY**

    Point IV…………………………………………………………….…………15-19

**COUNSEL FOR PETITIONER FAILED TO INVESTIGATE AND FAILED TO CALL TAMARA JOHNSON AND ATTORNEY ANDREW RENDEIRO**

    Point V…………………………………………………………….…………19-20

**MR. JOHNSON WAS SUBJECTED TO SPILLOVER PREJUDICE BASED UPON HIS WRONGFUL CONVICTION WITH RESPECT TO ANY OF THE COUNTS THE COURT CHOOSES TO VACATE**

Conclusion    …………………………………………………………………………………….20

Anderson v. United States,
443 F.2d 1226 (10th Cir. 1971)………………………………………………………..8

Coles v. Peyton,
389 F.2d 224 (4th Cir. 1968)……………………………………………………………17

Cornell v. Kirkpatrick,
665 F.3d 369 (2d Cir. 2011)……………………………………………………………17

Creel v. Johnston,
162 F.3d 385 (5th Cir. 1998)……………………………………………………………13

Davis v. United States,
1395 S. Ct. 2319 (2019)…………………………………………………………………1

Eze v. Senkowski,
321 F.3d 110 (2d Cir. 2003)……………………………………………………………17

Fernandez v. Capra,
916 F.3d 215 (2d Cir. 2019)…………………………………………………………14-15

Graham v. Wilson,
828 F.2d 656 (10th Cir. 1987)………………………………………………………13-14

Herrera v. Collins,
506 U.S. 390 (1993)……………………………………………………………………7

Holmes v. South Carolina,
547 U.S. 319 (2006)…………………………………………………………………9, 11

House v. Bell,
547 U.S. 518 (2006)………………………………………………………………7, 8, 10

In re Davis,
557 U.S. 952 (2009)…………………………………………………………………6, 7

Kaufman v. United States,
394 U.S. 217 (1969)……………………………………………………………………8

Kyles v. Whitley,
514 U.S. 419 (1995)…………………………………………………………………16-18

Lockhart v. Fretwell,

      506 U.S. 364 (1993)……………………………………………………………………17

McCleskey v. Zant,
      499 U.S. 467 (1991)……………………………………………………………………8

McQuiggin v. Perkins,
      569 U.S. 383 (2013)……………………………………………………………………6

Murray v. Carrier,
      477 U.S. 478 (1986)……………………………………………………………………7

Muyet v. United States,
      2004 WL 1746369 (S.D.N.Y. Aug. 3, 2004)…………………………………………….6

Napue v. Illinois,
      360 U.S. 264 (1959)…………………………………………………………………13-14

Ouber v. Guarino,
      293 F.3d 19 (1st Cir. 2002)……………………………………………………………18

People v. Baldi,
      54 N.Y.2d 137 (1981)…………………………………………………………………16

People v. Bennett,
      29 N.Y.2d 462 (1972)…………………………………………………………………17

People v. Droz,
      39 N.Y.2d 457 (1976)…………………………………………………………………17

People v. Fogle,
      307 A.D. 2d 299 (2d Dept. 2003)…………………………………………………17-18

People v. Moses,
      2018 N.Y. Misc. LEXIS 701 (Kings County Jan. 11, 2018)…………………………..13

People v. Oathout,
      21 N.Y.3d 127 (2013)…………………………………………………………………16

People v Taylor,
      156 A.D.3d 86 (N.Y.App.Div. 3d Dep't 2017)………………………………………16

Puglisi v. United States,
      586 F.3d 209 (2d Cir. 2009)……………………………………………………………6

Riggs v. Fairman,
      399 F.3d 1179 (9th Cir. 2005)…………………………………………………………18

Rodriguez v. Hoke,
    928 F.2d 534 (2d Cir. 1991)……………………………………………………16

Sanders v. Ratelle,
    21 F.3d 1446 (9th Cir.1994)……………………………………………………18

Schlup v. Delo,
    513 U.S. 298 (1995)………………………………………………………7, 8

Smith v. Page,
    1998 WL 25197 (N.D. Ill. 1998)………………………………………………14

State v. Phillips,
    61 So. 3d 130 (La. App. 2011)…………………………………………………..14

Strickland v. Washington,
    466 U.S. 668 (1984)………………………………………………………16

Thomas v. Kuhlman,
    255 F. Supp. 2d 99 (E.D.N.Y. April 7, 2003)………………………………………17

Townsend v. Sain,
    372 U.S. 293 (1963)………………………………………………………8

United States v. Alessi,
    638 F.2d 466 (2d Cir. 1980)………………………………………………8

United States v. Berryman,
    322 Fed. Appx. 216 (3d Cir. 2009)………………………………………………18

United States v. Bowie,
    198 F.3d 905 (D.C. Cir. 1999)………………………………………………18

United States v. Canova,
    412 F.3d 331 (2d Cir. 2005)………………………………………………8

United States v. DiNome,
    954 F.2d 839 (2d Cir. 1992)………………………………………………19

United States ex. rel. Hampton v. Leibach,
    347 F.3d 219 (7th Cir. 2003)………………………………………………18

United States v. O'Keefe,
    128 F.3d 885 (5th Cir. 1997)………………………………………………14

United States v. Nelson,
    921 F. Supp. 105 (E.D.N.Y. 1996)……………………………………………………18

United States v. Owen,
    500 F.3d 83 (2007)…………………………………………………………………..8

United States v. Tellier,
    83 F.3d 578 (2d Cir. 1996)……………………………………………………………19

United States v. Vargas,
    709 F. Supp. 2d 48 (D.D.C. 2010)……………………………………………………18

United States v. Vozezella,
    124 F.3d 389 (2d Cir. 1997)…………………………………………………………14

United States v. Wallach,
    935 F.2d 445 (2d Cir.1991)…………………………………………………………14

United States v. Zagari,
    111 F.3d 307 (2d Cir. 1997)…………………………………………………………8

White v. Illinois,
    502 U.S. 346 (1992)……………………………………………………...…3, 9, 11

Secondary Sources

Friendly, Is Innocence Irrelevant?  Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev.
142, 160 (1970)……………………………………………………………………8

## PRELIMINARY STATEMENT

Walter Johnson is sitting in prison for crimes that he did not commit. The testimony that Crystal Winslow has provided was false. Indeed, even at trial, there was evidence that she was unreliable and mistakenly identified Johnson as the perpetrator. Well, now we know she was, in fact mistaken and had a motive to lie – she was pressured by the police to implicate Walter Johnson.

Dexter Isaac committed the robberies that were attributed to Mr. Johnson. He's said this over and over again for the last 20 years, including to the Federal Government. He's made clear statements against penal interest – some of the most powerful and reliable evidence that can be presented to the court.

Johnson's right to have effective assistance of counsel was also violated in that his trial attorney failed to investigate and call Andrew Rendeiro[1] and Tamara Johnson who would have provided exculpatory testimony and struck directly at the heart of Crystal Winslow's testimony.

Moreover, this Court should consider Point V and Point VI in the September 9, 2020 supplemental motion before the Court. The crimes used to enhance Mr. Johnson's sentence were committed when he was an adolescent. He is a different man now. Additionally, under <u>Davis v. United States</u>, 1395 S. Ct. 2319 (2019), the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague and unpredictable.

Because of these reasons and those to follow, this Court should vacate Mr. Johnson's conviction or order a hearing to test the veracity of his claims.

## STATEMENT OF FACTS[2]

---

[1] I have spoken to Mr. Rendeiro. He is ready and willing to testify about Winslow's statement that she gave to him. I respectfully request the Government to turn over Mr. Rendeiro's notes that were produced in 1996.

[2] **Monique Winslow, Tisha Winslow** and **Henrietta Winslow** all testified that Johnson followed the family and Ms. Winslow *after* charges were filed. These witnesses all stated that they "heard" Johnson was the culprit of the

For a full statement of facts please see Mr. Johnson's direct appeal in the court file. In summary, Walter Johnson was accused of robbing Crystal Winslow and J.T. Spurgeon on March 15, 1995, April 21, 1995 and February 6, 1996. Mr. Johnson never conspired to or possessed the drugs that JT Spurgeon was robbed of. Finally, Johnson did not coerce or intimidate any of the witnesses in this case. The following will detail the most pertinent parts of the trial.

**Crystal Winslow** testified that she was robbed by Walter Johnson on three separate occasions, March 15, 1995, April 21, 1995 and February 6, 1996. Only on the last occasion did she provide his name, yet she testified that she met him and knew who he was beginning in January of 1995. Winslow detailed in her testimony that, after she was allegedly robbed by Johnson on March 15, 1995, she moved to an address that Johnson regularly frequented. Right after the second robbery, on April 21, 1995, Winslow saw Johnson outside the building, but said nothing to law enforcement. Finally, in February of 1996, Winslow testified that she was robbed again by Johnson in the vicinity of the 75th Precinct. This was the first time that Winslow mentioned Johnson's name. She failed to mention his involvement in these other alleged robberies and assaults on the day of the last robbery. See TT 76-144.

Winslow detailed how she met with Johnson to orchestrate dropping the charges that were filed by the Kings County District Attorney's Office. TT: 162-194. What she failed to tell the jury was that, independently, she sought an attorney. See Exhibit H. In fact, Winslow testified that Johnson told her that his attorney would *not have wanted her to get an attorney before giving an official statement that she lied before the grand jury*. TT: 194.

On cross examination, Winslow admitted that after the March 16, 1995 and April 21, 1995 robberies, she failed to provide *any* description that matched Walter Johnson even though

---

April 21, 1995 robbery from Crystal Winslow and Jamise Posley. **Jamise Posley** testified that she believed that Johnson committed the April 21, 1995 robbery with absolutely no evidence to substantiate her belief.

Mr. Johnson has distinctive features on his face. TT: 225-246. She also conceded that she never told the Kings County Grand Jury that she was raped. TT: 261-262.

**JayTee Spurgeon** testified that, although he knew Walter Johnson, he could not identify Johnson as a perpetrator in the March 15, 1995 robbery. Spurgeon testified that, at some point after he physically assaulted Crystal Winslow, Winslow told him that Johnson was one of the men involved with the April 21, 1995 robbery. Spurgeon did note that Johnson did hang out at 92 Woodruff Avenue, which is where Winslow and Spurgeon moved to after the March 15, 1995 robbery. TT: 367-522.

## <u>EVIDENCE DISCOVERED SINCE TRIAL</u>

The evidence now before the court proves that Walter Johnson did not commit the crimes that he was accused of; Dexter Isaac admitted to committing these crimes both to other people and the Government. The following evidence shows, definitively, that Dexter Isaac has provided a powerful and credible statement against his penal interests to several parties: <u>See</u> <u>White v. Illinois</u>, 502 U.S. 346 (1992).

(a). On February 5, 2020, this office was provided with a radio interview with Isaac by The 313 Live Show, a podcast, wherein Isaac stated on an audio recording that Petitioner did not commit the crimes he was accused of – <u>See</u> Exhibit A.[3]

(b). In 2019, Petitioner came in the possession of a DEA report from March 7, 2012, wherein Isaac admitted to the crimes that Petitioner was in jail for, yet, the Government did nothing other than advise Petitioner's former counsel of the existence of the exculpatory statement. <u>See</u> Exhibit B. Counsel requested the entire file on Isaac, yet the Government failed to provide this. <u>See</u> Exhibit C.

---

[3] As of this writing, Mr. Isaac has been contacted with regard to providing an affidavit but has not provided one.

(c). On May 7, 2000, James A. Mitchell provided an affidavit that Dexter Isaac admitted to the crimes that Petitioner was in prison for and Petitioner was not involved in those crimes. <u>See</u> Exhibit D. On June 27, 2000, Ray A. Majors provided an affidavit that Isaac admitted to the crimes that Petitioner was in prison for and that Petitioner had no part in those crimes. <u>See</u> Exhibit E. On May 21, 2002, Chad Flowers provided an affidavit that Isaacs admitted to the crimes that Petitioner was in prison for and that Petitioner had no part in those crimes. <u>See</u> Exhibit F. On May 10, 2012, Abdul Rahim Howard provided an affidavit that Isaacs admitted to the crimes that Petitioner was in prison for and that Petitioner had no part in those crimes. <u>See</u> Exhibit G.

Crystal Winslow's testimony with regard to Petitioner's involvement in the robberies was false. Evidence has been uncovered due to Freedom of Information Act requests that prove that she had hired an attorney due to her fear of perjury before a grand jury in Kings County. Moreover, Winslow's testimony about her knowledge of the Petitioner was entirely false; she was intimately involved with Petitioner's family for years as she had dated Petitioner's brother who died in 1990. The following evidence supports these claims:

(a). The Government failed to turn over a transcript of the unsealed Kings County file that clearly depicts that both the Kings County District Attorney's Office and Petitioner's state defense counsel had knowledge of Winslow's recantation *and* the fact that Ms. Winslow hired an attorney because of her fear of perjury charges due to her false testimony before a Kings County grand jury. A fact that becomes clear from the transcript is that the Kings County District Attorney's Office could not substantiate any threats that were made to Ms. Winslow as of October 10, 1996; (See Exhibit H)[4]

---

[4] This file came into the possession of Petitioner in 2018, by way of a FOIL request to the Kings County Supreme Court. At this point, minimally, this is the extent of <u>Brady</u> or <u>Jencks v. United States</u> material that the

(b).  On June 15, 2020, Tamara Johnson, Petitioner's sister, provided a detailed affidavit that (1) Crystal Winslow was very familiar with the Johnson family, contrary to the entirety of her testimony,[5] (2) even after allegedly being robbed three separate times and raped by Petitioner and his alleged cohorts, Winslow continued to come to the Johnson home and (3) Winslow admitted to Ms. Johnson that investigators forced her to make a complaint and go forward with the prosecution of Petitioner. See Exhibit I.[6]

On April 3, 2003, JayTee Spurgeon admitted to Frantz Michel that Petitioner was not involved in the robbery that took place in March of 1995 at Spurgeon's address on Bond Street in Brooklyn. See Exhibit J.

## DISCUSSION

### POINT I
### AT A MINIMUM A HEARING SHOULD BE HELD

The Court should vacate Walter Johnson's conviction life sentence because, as demonstrated below, he did not rob Crystal Winslow, Spurgeon or anyone else involved in this case for that matter, nor did he coerce Winslow as a witness.[7] Another man, Dexter Isaac, both publicly and privately, to several people including the Government, has claimed to have robbed

---

Government failed to turn over, but there appears to be more. Petitioner has requested his file from the Department of Justice several times, and still *has an open FOIA request, as Petitioner continues to diligently investigate this case*, yet the Department of Justice has failed to comply with Petitioner's request. Moreover, the transcript seemingly torpedoes the Government's claims that Petitioner was tampering with Crystal Winslow.

[5] In fact, Ms. Winslow specifically testified that the first time she had *even seen the Petitioner was in January of 1995*.

[6] While Ms. Johnson is not newly discovered evidence, the facts provided in her affidavit are, nonetheless, evidence that the jury did not hear.

[7] Likewise, Mr. Johnson never possessed or conspired to possess the cocaine that was allegedly taken from Spurgeon.

Winslow and J.T. Spurgeon. Alternatively, this Court should order a hearing to explore the veracity of Mr. Johnson's claims.

"Section 2255 enables a prisoner in federal custody to petition the sentencing court to 'vacate, set aside or correct the sentence' if the sentence is in violation of the United States Constitution, imposed a court without jurisdiction, is excessive under applicable law or 'is otherwise subject to collateral attack.'" Muyet v. United States, 2004 WL 1746369 at 2 (S.D.N.Y. Aug. 3, 2004) (quoting 28 U.S.C. § 2255).

Mr. Johnson is entitled to a hearing on the merits of his application unless it is conclusively shown in the record that he is not entitled to relief:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall….grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect hereto." 28 U.S.C. § 2255(b).

Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

In McQuiggin v. Perkins, 569 U.S. 383 (2013), the Supreme Court held that a persuasive showing of actual innocence should take precedence over time limitations and procedural bars. Likewise, in In re Davis, 557 U.S. 952 (2009), the Supreme Court directed the Georgia state courts to take evidence concerning the defendant's actual innocence and to hear from the witnesses who had previously been denied a hearing on procedural grounds. Doing the same in Mr. Johnson's case would comport with the core function of the criminal justice system – convicting only the guilty and exonerating the innocent – and would recognize that allowing an innocent man to rot in prison on technical grounds is even more abhorrent than allowing a guilty person to evade justice for such reasons.

In addition to a freestanding claim of innocence, the Supreme Court has held that innocence claims are clearly a gateway for a Court to review underlying constitutional errors and

are not subject to procedural bars. <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986). The Supreme Court has recognized that, in the extraordinary case, the principles of finality must yield "to the imperative of correcting [fundamental injustice]." <u>House v. Bell</u>, 547 U.S. 518, 536 (2006) (<u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995); <u>Carrier</u>, 477 U.S. at 495 (<u>citations omitted</u>)); <u>see also</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993).

In the case at bar, Walter Johnson has taken years to accumulate the evidence now before the Court. He has exercised due diligence to confirm the assertions made by each witness. This has taken *decades*. As the Supreme Court has emphasized, a defendant is not treated fairly where "no court, state or federal, has ever conducted a hearing to assess the reliability of the score of postconviction affidavits [and other evidence] that, if reliable, would satisfy the threshold showing for a truly persuasive demonstration of actual innocence." <u>In re Davis</u>, 577 U.S. 952 (2009) (Stevens, J., concurring). Here Johnson, too, surely deserves that one day in court – due process requires it.

**POINT II**
**NEWLY DISCOVERED EVIDENCE PROVES THAT MR. JOHNSON**
**IS ACTUALLY INNOCENT WITH REGARD TO ALL OF THE CRIMES CHARGED.**
**ALTERNATIVELY, NEWLY DISCOVERED EVIDENCE WOULD HAVE PROBABLY**
**CHANGED THE VERDICT.**

The evidence before the Court proves that Mr. Johnson is sitting in prison for a crime he did not commit. The Supreme Court has established a criteria for individuals to assert actual innocence: with the presentation of the evidence the petitioner is now submitting to the court, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Schulp</u>, 513 U.S. at 327; <u>see also</u> <u>Bell</u>, 547 U.S. at 537. This holds the petitioner to the standard of presenting a truly extraordinary case, "while still providing

petitioner a meaningful avenue by which to avoid a manifest injustice."  <u>Schulp</u>, 513 U.S. at 327(<u>quoting</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991).

As elucidated by the <u>Bell</u> Court, a habeas court *must consider all of the evidence, whether old or new "without regard to whether it would be necessarily admitted under rules of admissibility that would govern at trial*.'"  547 U.S. at 537-38 (<u>Schulp</u>, 513 U.S. at  327-28 (<u>quoting</u> Friendly, Is Innocence Irrelevant?  Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)(emphasis added)).

Alternatively, Mr. Johnson is entitled to a new trial because he has made a showing that the evidence [of Dexter Issaac's involvement and Crystal Winslow's and JT Spurgeon's lies] could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal." <u>United States v. Owen</u>, 500 F.3d 83, 87 (2007) (<u>quoting</u> <u>United States v. Alessi</u>, 638 F.2d 466, 479 (2d Cir. 1980); <u>see also</u> <u>United States v. Canova</u>, 412 F.3d 331, 349 (2d Cir. 2005); <u>United States v. Zagari</u>, 111 F.3d 307, 322 (2d Cir. 1997). Although claims of newly discovered evidence usually fall within contours of Rule 33 of USCS Rules of Criminal Procedure, if the claim would be untimely as not coming within two-year limitation, a motion can be properly entertained by the Court under 28 USCS § 2255. <u>Anderson v. United States</u>, 443 F.2d 1226 (10th Cir. 1971) (<u>citing</u> <u>Kaufman v. United States</u>, 394 U.S. 217, 227 (1969); <u>applying</u> <u>Townsend v. Sain</u>, 372 U.S. 293, 313 (1963)).

a.  <u>Mr. Johnson is actually innocent of the Robberies, Drug Conspiracy and Witness Tampering that was charged in the indictment</u>

Had the jury heard that the evidence heard the admissions of Isaac and the admissions of perjury and coercive tactics of the Government by Crystal Winslow and JayTee Spurgeon's admission that he knew the "robbers" in the March 1995 incident, which was staged, no

reasonable juror would have convicted Walter Johnson. This case was essentially a one witness case that was supported by hearsay and innuendo.

Over the course of 20 years, culminating with Isaac's own words in February of 2020 and Johnson's discovery of a 302 in 2019, we now know that Dexter Isaac was the real perpetrator behind the Winslow robberies. See Exhibits A & B. Isaac has admitted this *continually* to at least 4 inmates beginning in the year *2000*. He is *adamant* that Walter Johnson did not commit the crimes that he was charged with and ultimately given the sentence of LIFE for. See Exhibits D, E, F, G. This evidence is powerful, reliable and clearly would have been used to present a theory of third-party culpability. See Holmes v. South Carolina, 547 U.S. 319 (2006); White v. Illinois, 502 U.S. 346 (1992).

Crystal Winslow's fear of *perjury* in a Kings County Grand Jury was so evident that by October 10, 1996, she had already retained an attorney – on her own. See Exhibit H. She *never* testified to this at trial. Additionally, the Government *knew this* and did not reveal to defense counsel that Winslow was scrambling due to her lies regarding Johnson.[8]

Moreover, the Government, had it done any investigation, should have known both Winslow's and Spurgeon's intimate familiarity with Johnson, thereby making Winslow's, or Spurgeon's for that matter, delay in mentioning Johnson's name to law enforcement critical. Winslow completely lied about her relationship with the Johnson family. It was only defense counsel's failure to call Tamara Johnson that cause the jury from hearing that it was *Winslow* not Johnson, who approached Johnson and told him about (1) her false allegations against him and (2) the pressure investigators were putting on Winslow to implicate Walter. See Exhibit I. This evidence would have been devastating to the Government's case.

---

[8] It should be clear, Winslow *was* the victim of a crime. Walter Johnson just was not the perpetrator.

Had the jury heard that the evidence now presented to the Court, "it is more likely than not that no reasonable juror would have found [Mr. Johnson] guilty beyond a reasonable doubt." Schulp, 513 U.S. at 327; see also Bell, 547 U.S. at 537. The Court must remember that there was absolutely no evidence against Mr. Johnson *other than Crystal Winslow*. No one else implicated Johnson. In fact, witnesses that testified at trial stated over and over that Johnson denied robbing Winslow. Couple that with Dexter Isaac's admission. Powerful; clear and convincing. As such, this Court should vacate Mr. Johnson's conviction.

b. <u>If the jury heard the newly discovered evidence now before the Court, there is a reasonable probability that the outcome would have been different.</u>

In the case at bar, had the jury heard the Isaac admissions, Spurgeon's admissions and Crystal Winslow's admissions and seen the transcript wherein the Kings' County District Attorney's Office *acknowledged* that Winslow had hired an attorney out of fear that she committed perjury, the jury would have probably acquitted Johnson.

It is well established, for evidence to be newly discovered, the following elements must be met:

> (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

See United States v. Peller, 137 F.Supp. 242, 254 (S.D.N.Y. March 18, 1957) (quoting Johnson v. United States, 32 F.2d 127, 130 (8th Cir. 1929); Brandon v. United States, 190 F.2d 175, 178 (9th Cir. 1951)).

The Government may counter that many pieces of evidence fall outside of the 1-year statute of limitations that govern 28 U.S.C. § 2255. But, this was a time consuming and all-encompassing investigation by Mr. Johnson, an indigent prisoner. He should not be punished for

this delay. The Supreme Court, 2ⁿᵈ Department, in <u>People v. Tankleff</u> addressed this type of argument and it entirely rebuts this position:

> "[T]he due diligence requirement is measured against the defendant's available resources and the practicalities of the particular situation" (34 NY Jur 2d, Criminal Law § 3064, at 866; <u>see</u> <u>People v Hildenbrandt</u>, 125 AD2d 819, 821, 509 NYS2d 919 (2d Dep't1986))… The defendant's investigation resulted in a body of new evidence which required time to accumulate. He should not be penalized for waiting to amass all of the new evidence and then presenting it cumulatively to the County Court. Such conduct avoided separate motions upon the discovery of each witness [or development of each argument], obviated the squandering of resources, and preserved judicial economy.

49 A.D.2d 160, 180 (N.Y.App.Div. 2d Dep't 2007).

Taking the above elements *seriatim*, it is clear that had the jury been advised that of the admission by Isaac and the lies of Winslow and Spurgeon, this evidence "[would] probably change the result if a new trial is granted." With regard to whether the evidence was newly discovered, the admission of Isaac only came after time and, frankly, a tremendous amount of investigation took place. It was only after tracking down the 302 that took place in 2012 and the 2020 interview on the radio show that the affidavits from the four incarcerated men became exponentially reliable. Isaac's admission is the definition of newly discovered evidence – it is material, not cumulative of anything and would have probably changed the verdict when one compares it with the evidence presented at trial. <u>See</u> <u>Holmes v. South Carolina</u>, 547 U.S. 319 (2006); <u>White v. Illinois</u>, 502 U.S. 346 (1992)

While it is certainly true that the revelations[9] provided by Tamara Johnson are not newly discovered, the transcript of the Kings County proceedings on October 10, 1996 (Exhibit H) certainly appears to be.[10] Apparently, Kevin Keating, trial counsel, was not at all aware that

---

[9] Make no mistake about it, Andrew Rendeiro would have also been a key witness for Johnson. His testimony would have both refuted the robbery, cocaine and witness tampering (obstruction of justice) charges.

[10] And if it is not, trial counsel was definitely ineffective for not obtaining this.

Winslow had, on her own, hired a lawyer due to her fear of a perjury charge in Kings County Supreme Court due to her false testimony before the state grand jury. This transcript is not cumulative to any evidence presented, it was only recently found through a diligent search and unsealing of Mr. Johnson's Supreme Court file under Indictment No. 1637/96. There is no doubt a reasonable probability it would have changed the verdict: it would have eviscerated Winslow's testimony. Winslow specifically testified that Johnson *told her not to get her own attorney – to only speak to his*. TT: 194. Well, she went to get her own attorney, not because of her fear of Johnson, but her fear of being charged with perjury.

This is a common theme for Winslow *and* Spurgeon. The Court should remember, after the alleged March 15, 1995 robbery, both Winslow and Spurgeon were arrested by federal agents. This was the beginning of manipulation by the Government.[11] Pressure.

Spurgeon, like Winslow, who knew Johnson well, did not inculpate Johnson in the alleged March 15, 1995 robbery. That's not surprising now that we have the Frantz Michel affidavit. This was not a real robbery – in fact, it appears the NYPD knew as well, which is why they arrested both Winslow and Spurgeon for the AK-47 found in the house. Michel's affidavit is most certainly material and not cumulative. It not only strikes at the reliability of Spurgeon's testimony, but also Winslow's. The jury never heard this – there is more than a reasonable probability that it would have changed the outcome of the trial with the weakness of the evidence presented by the Government.[12]

---

[11] Former Det. William Oldham actually provides motive to frame Johnson: Johnson had been acquitted of shooting three NYPD detectives. See Hearing transcript dated October 23, 1997, Page 80-102; see also Lawson, Guy and Oldham, William. The Brotherhoods. Pg. 393-397 (See Exhibit K – Excerpts from book). By Oldham's account in his book, he only became active in the case when he heard AUSA Samuel Buell talk about Johnson's rap sheet in October of 1996. This was well after Winslow recanted and not long after she hired an attorney. By that point, the Brooklyn District Attorney's Office had no case against Johnson.

[12] Again, beyond Winslow, everything was innuendo and hearsay. In fact, both Henrietta Winslow and JayTee Spurgeon – who both knew Johnson well – did not identify him.

This Court should consider all of the evidence presented to the court cumulatively – not piece meal. It is clear that had the jury heard all of the evidence before the Court now, there is a reasonable probability that they would have acquitted Mr. Johnson. <u>See generally</u>, <u>People v. Moses</u>, 2018 N.Y. Misc. LEXIS 701 (Kings County Jan. 11, 2018) (The Court may consider all evidence presented collectively).

As such, this Court should vacate Mr. Johnson's conviction and order a new trial or, alternatively, order a hearing to determine the veracity of Mr. Johnson's claims.

**POINT III**

**THE GOVERNMENT ALLOWED A FRAUD UPON THE COURT AND VIOLATED PETITIONER'S RIGHT TO DUE PROCESS WHEN BOTH CRYSTAL WINSLOW AND JAYTEE SPURGEON TESTIFIED FALSELY**

Separately and apart from the issue of newly discovered evidence, Johnson is also entitled to relief on the ground that the *old* evidence – the trial testimony of Crystal Winslow and Jaytee Spurgeon – was perjured and that the prosecutor knew or should have known that it was perjured. Frankly, Winslow's testimony was the entire case – her credibility and reliability were paramount. This constituted a fraud on the court and a due process violation under <u>Napue v. Illinois</u>, 360 U.S. 264, 269-71 (1959), and its progeny.

It is well settled under <u>Napue</u> and its progeny that prosecutors may not permissibly rely on false testimony to obtain a conviction, and in fact has an affirmative obligation to correct the record if its witnesses testify falsely. Notably, in order to obtain relief on a <u>Napue</u> claim, it is not necessary to prove that the Government's notice of the falsehood was actual; instead, relief is mandated if the prosecuting attorney had constructive notice of the falsity of the testimony, e.g., through documents in its file. <u>See</u> <u>Creel v. Johnston</u>, 162 F.3d 385 (5th Cir. 1998); <u>Graham v.</u>

Wilson, 828 F.2d 656 (10th Cir. 1987). "In order to establish knowing use of perjured testimony the petitioner may rely on circumstantial evidence and need only show either actual or constructive knowledge." Smith v. Page, 1998 WL 25197 (N.D. Ill. 1998). Moreover, the State's knowing use of perjurious testimony in violation of Napue has been held to require "virtually automatic" reversal. United States v. Wallach, 935 F.2d 445, 456 (2d Cir.1991).

In sum, Napue and its progeny require a new trial if "(1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material." State v. Phillips, 61 So. 3d 130, 136 (La. App. 2011), citing United States v. O'Keefe, 128 F.3d 885, 893 (5th Cir. 1997).

Here, Winslow's testimony regarding Johnson's involvement in the robberies *and coercion of her* was demonstrably false and the Government knew it. The October 10, 1996 hearing transcript, which apparently defense counsel did not have at the time of trial,[13] shows that Winslow actively sought out counsel due to her fear of perjury. The Government was well aware of her actions, as the Government was in contact with the Kings County District Attorney's Office. Yet, Winslow was allowed to testify that it was actually Walter Johnson that *told her not to get a lawyer and that she recanted because of her fear of him*. We know now, but the Government knew then, that Winslow did in fact get a lawyer *due to hear fear of perjury not Johnson*! See United States v. Vozezella, 124 F.3d 389, 392-393 (2d Cir. 1997).

Moreover, the Government should have known Winslow's relationship with Johnson and his family as agents were closely monitoring Winslow. Tamara Johnson was clear – Winslow knew Walter and Walter's family very well and Winslow stated that she was lying about Walter's involvement due to police pression. See Fernandez v. Capra, 916 F.3d 215, 229-230 (2d

---

[13] Arguably, the failure of the Government to turn over this file was a Brady violation. Winslow's actions dovetailed with her statements that she made to defense counsel Andrew Rendeiro – that Walter Johnson did not rob her. She was *exposed* to perjury charges for her false testimony in front of a Kings County Grand Jury.

Cir. 2019) (Specifically, the <u>Fernandez</u> case speaks of the Court's obligation to investigate the coercion of a witness. Here, there is evidence that Winslow was extraordinarily hesitant to cooperate. With Tamara Johnson's affidavit it is now clear, that hesitation was not because of Walter Johnson; it was because Winslow's implication of Johnson was a lie).

The testimony of the rest of the witnesses, whom all stated that Crystal Winslow told them Johnson committed these robberies, is extraordinarily suspect. None of these people, including Spurgeon, came forward until the federal government became involved. In fact, both Henrietta Winslow and JayTee Spurgeon knew Walter Johnson well, yet they did not identify him in either the March 15, 1995 robbery or the April 21, 1995 robbery. Not to mention that the March 15, 1995 robbery *did not even occur by Spurgeon's account to Franz Michel*. <u>See</u> Exhibit J. The Government was aware of the suspect nature of the ancillary witnesses, such as Henrietta Winslow's and JayTee Spurgeon's, testimony that Winslow said Johnson did it. Their testimony was wholly unreliable – it was a lie.

The Government continually allowed its witnesses to testify falsely about material facts. As such this Court should order a new trial because there is reasonable likelihood that the evidence could have affected the outcome of the trial.

## POINT IV

### COUNSEL FOR PETITIONER FAILED TO INVESTIGATE AND FAILED TO CALL TAMARA JOHNSON AND ATTORNEY ANDREW RENDEIRO

Petitioner submits that trial counsel's performance was deficient. He failed to call Tamara Johnson, who could have entirely refuted Crystal Winslow's testimony and would have testified that Crystal *admitted to lying at the behest of police officers*. Counsel also failed to investigate the Kings County Supreme Court court file, which would have shown that on October 10, 1996, the Government was aware that Winslow was so concerned over her perjured testimony in front

of the state grand jury that she hired a lawyer. But defense counsel did not stop there. He failed to call attorney Andrew Rendeiro, who could have provided insight to Winslow's recantation and whether he perceived that she was there to recant under duress.[14]

While it is Johnson's position that any one of these errors by counsel is enough to have a reasonable possibility that the verdict would have been different, "'the cumulative effect of defense counsel's actions deprived defendant of meaningful representation'" See Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991); People v Taylor, 156 A.D.3d 86, 97 (N.Y.App.Div. 3d Dep't 2017)(quoting People v. Oathout, 21 N.Y.3d 127, 132 (2013) (citations omitted)).

It is axiomatic that under both the United States and New York State Constitutions that criminal defendants are entitled to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686 (1984); see also People v. Baldi, 54 N.Y.2d 137, 147 (1981). Under Strickland and its progeny, a defendant who claims that he was denied the effective assistance of counsel must meet a two-prong test: he must show both that his attorney fell below accepted professional standards and that he was prejudiced by his counsel's lapse. See id.

In order to demonstrate prejudice under the Strickland standard, the defendant must show a reasonable probability that his counsel's errors affected the outcome of the trial. See Strickland, 466 U.S. at 686. In Kyles v. Whitley, 514 U.S. 419, 434 (1995), the United States Supreme Court explained that the "reasonable probability" standard is met when the errors of trial counsel "undermine confidence in the outcome of the trial." In addition, the Kyles Court further stated that the reasonable probability standard does not require demonstration by a preponderance of the evidence that counsel's error "would have resulted ultimately in the

---

[14] Specifically, Mr. Rendeiro has informed the undersigned that he remembers Crystal Winslow. She was calm and did not appear to be under duress. If she had been under duress, he would have noted such and been cautious in taking her statement. Mr. Rendeiro has made it clear that, if a hearing was granted, he will testify.

defendant's acquittal" and that "[a] defendant need not demonstrate that after discounting the [errors of counsel], there would not have been enough left to convict." <u>Id.</u> at 434-35.

Thus, a defendant need not show that he would have been acquitted or that he would have been entitled to judgment as a matter of law had his counsel not erred, but only that his counsel's performance undermines confidence in the outcome when considered as part of the whole case. <u>Id.</u> Moreover, this determination may be made with the benefit of hindsight. <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993).

It is well settled that the right to effective assistance under New York law entitles the defendant "to have counsel conduct *appropriate investigations, both factual and legal*, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial." <u>Coles v. Peyton</u>, 389 F.2d 224, 226 (4th Cir. 1968); <u>quoting</u> <u>People v. Bennett</u>, 29 N.Y.2d 462, 466 (1972) (emphasis added). A defendant is entitled to an attorney "who has taken the time to review and prepare both the law and the facts relevant to the defense." <u>People v. Droz</u>, 39 N.Y.2d 457, 462 (1976). Indeed, "the failure to investigate is so fundamental to the deprivation of the effective assistance of trial counsel that it cannot be rationalized away with a post hoc construction of the trial theory of defense." <u>Thomas v. Kuhlman</u>, 255 F. Supp. 2d 99, 102, 109-112 (E.D.N.Y. April 7, 2003); <u>quoting</u> <u>People v. Fogle</u>, 307 A.D. 2d 299, 301 (2d Dept. 2003).

In sum, "if certain [of counsel's] omissions cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness," then the defendant has been deprived of his constitutional rights. <u>Eze v. Senkowski</u>, 321 F.3d 110, 112 (2d Cir. 2003); <u>accord</u> <u>Cornell v. Kirkpatrick</u>, 665 F.3d 369, 371 (2d Cir. 2011) (citing <u>Eze</u>). That is clearly the case here. Tamara Johnson and Andrew Rendeiro's

testimony would have eviscerated Crystal Winslow's testimony. Moreover, the minutes from October 10, 1996 would have provided insight to Winslow's mindset at that point – she was only afraid of going to jail, not Walter Johnson.

A claim ineffective assistance claim only requires proof of a *reasonable probability* of a different outcome. And a reasonable probability is "a fairly low threshold." Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir. 2005), citing Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir.1994). In particular, the reasonable probability standard does not require that prejudice be demonstrated by a preponderance of the evidence. Kyles v. Whitley, 514 U.S. 419, 434 (1995). Courts have accordingly held that a reasonable probability "may be less than fifty percent." Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002); United States v. Bowie, 198 F.3d 905, 908-09 (D.C. Cir. 1999) (same); United States v. Vargas, 709 F. Supp. 2d 48, 50 (D.D.C. 2010) (same); United States v. Nelson, 921 F. Supp. 105, 120 (E.D.N.Y. 1996) (finding that 33 percent chance amounted to a reasonable probability). Indeed, it has been held that a reasonable probability exists whenever the chances of a different outcome are "better than negligible," United States ex. rel. Hampton v. Leibach, 347 F.3d 219, 246 (7th Cir. 2003), or put another way, if they are "more than mere speculation." United States v. Berryman, 322 Fed. Appx. 216, 222 (3d Cir. 2009).

Here, counsel did not call Tamara Johnson as a witness. After speaking with Mr. Rendeiro, it is clear that trial counsel never indicated or contacted Mr. Rendeiro for his testimony. Johnson and Rendeiro's testimony plus the hearing minutes from state court, which could have easily been requested through the Kings County Supreme Court Clerk's Office, in combination with the evidence now before the Court is powerful. There is no excuse for trial

counsel's failure to obtain this evidence, investigate these facts or to call these witnesses. As such, this Court should vacate Mr. Johnson's conviction and order a new trial.

### POINT V
### MR. JOHNSON WAS SUBJECTED TO SPILLOVER PREJUDICE BASED UPON HIS WRONGFUL CONVICTION WITH RESPECT TO ANY OF THE COUNTS THE COURT CHOOSES TO VACATE

Mr. Johnson submits that the effect of his wrongful conviction on any of the charges goes far beyond the charges that directly relate to those events. Winslow's testimony was the entire case. It is woven through all the facts because the only corroboration of her is other witnesses who testified that *she told them that Johnson was the perpetrator*. Indeed, the evidence supporting Walter Johnson's involvement was weak when viewed in totality.

In United States v. DiNome, 954 F.2d 839 (2d Cir. 1992), the Second Circuit reversed a District Court Judge who granted a judgment of acquittal on RICO and Bribery charges but denied a mistrial as to remaining charges against two defendants:

> A dismissal of charges pursuant to Fed. R. Crim. P. 29 does not require granting a mistrial as to remaining charges unless the dismissed charges were brought in bad faith or the defendants suffered some prejudice as a result of the presence of the now dismissed charges. [W]here, as here, the charge which originally justified joinder turns out to lack the support of sufficient evidence, a trial judge should be particularly sensitive to the possibility of such prejudice." After the granting of their Rule 29 motion on the RICO counts, the Hellmans should have been severed for a separate trial on the mail and wire fraud counts. Such a trial could have been completed in a very short period of time with the risk of spillover prejudice entirely eliminated. The Hellmans' mail and wire fraud convictions must thus be reversed. They may of course be retried. (Emphasis added).

Id. at 845; accord United States v. Tellier, 83 F.3d 578, 581-82 (2d Cir. 1996) (reversal of RICO count required reversal of Hobbs Act count "given the enormous amount of spillover prejudice" from evidence introduced on that count).

The wrongful conviction that Johnson received on any of the counts should cause this Court to vacate all of the counts.[15]  Because of this, Mr. Johnson should receive a new trial.

## **<u>CONCLUSION</u>**

Based upon the above, this Court should vacate Mr. Johnson's conviction and dismiss the indictment or order a new trial, or, alternatively, hold a hearing to test the veracity of Mr. Johnson's claims.

Dated: November 6, 2020
Forest Hills, NY

Respectfully submitted,
**JUSTIN C. BONUS, ESQ.**
*Attorney for Defendant*
118-35 Queens Blvd, Suite 400
Forest Hills, NY 11375


By: <u>/s/*Justin Bonus*</u>
    Justin C. Bonus, Esq.

---

[15] For instance, it is possible that Johnson could have obstructed justice *even if* he was innocent of all the other charges that he faced.